IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   Plaintiff,

  vs.             Case No. 07-10076-01-JTM

KEVIN HINSON,

   Defendant.

MEMORANDUM AND ORDER

   Kevin Hinson was found guilty of (Count 1) conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); (Count 2) possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (Count 3) using telephones in facilitating the knowing and intentional distribution of methamphetamine in violation of 21 U.S.C. § 843(b); and (Count 4) distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. By specific interrogatory, the jury found as to Count 2 that Hinson had sold 40.96 grams of a mixture containing methamphetamine, the equivalent of 28.01 grams of pure methamphetamine, and as to Count 4 that Hinson had sold 112.24 grams of a mixture containing methamphetamine, or 66.93 grams of pure methamphetamine. The court sentenced Hinson to a term of imprisonment of 240 months on Counts 1, 2, and 4, and a concurrent term of 48 months on Count 3. The judgment and sentence were affirmed on appeal. *United States v. Hinson*, 585 F.3d 1328 (10th Cir. 2009).

The matter is now before the court on Hinson's Motion for Relief under 28 U.S.C. § 2255, which argues that his trial counsel was constitutionally insufficient in seven areas. He also contends that the cumulative effect of these errors was to deprive him of a fair trial. For the reasons stated herein, the court finds that Hinson's motion is without merit.

The Sixth Amendment guarantees a criminal defendant effective representation by counsel. Claims of ineffective assistance of counsel require proof both that his counsel's performance "fell below an objective standard of reasonableness," and a showing that this deficient performance deprived him "of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See., e.g., United States v. Washington*, 619 F.3d 1252, 1256-57 (10th Cir. 2010).

Hinson first argues that in the government's direct examination of the informant Mac Pingry's attorney, Phillip White, was misleading because it "mislead the jury by creating the face impression that the government had not and was not going to file a Rule 35 motion." (Dkt. 65, at 4, 7). Hinson contends that his counsel was deficient in failing to lodge an objection to this examination.

The court has carefully reviewed the trial transcript and finds that Hinson has failed to show that counsel was deficient in failing to raise the objections he now contends should have been raised. (*Id*. at 8). The subject of Pingry's expectation as to an agreement for a reduced sentence were fully explored by counsel for the government and the defendant. Pingry testified that he hoped for a reduction, but the government had "promised me nothing." (Tr. 207-08). The government's examination on the issue, which was prompted in by defense counsel's inquiry into the existence of an agreement, was not misleading, as it simply established that no consideration was directly offered to Pingry in exchange for his cooperation. Nothing in that inquiry implied to the jury that a Rule 35

motion would *never* be filed on behalf of Pingry, and the fact that the government did subsequently file a Rule 35 motion in his favor does not show the existence of an agreement at the time of Pingry's testimony.

The failure to advance the objection was not deficient because the government's inquiry was not misleading. Any such objection would have been overruled as without merit.

Second, Hinson contends that, prior to his cross-examination of White, counsel should have sought a recess in order to obtain Pingry's Presentence Investigation Report (PSR) "so that counsel could effectively cross-examine White about the terms of Pingry's plea agreement." (Dkt. 65, at 9). He contends that by fuller cross-examination, counsel could have determined the amount of methamphetamine charged as relevant conduct against Pingry, and would generally "have been able to establish other significant aspects of Pingry's plea agreement." (*Id*. at 11).

The court finds that counsel's conduct was not deficient. Pingry's plea agreement was introduced as an exhibit, and the jury was free to examine all of its terms. Both Pingry and White testified that the plea agreement was the only agreement between Pingry and the government, and the agreement specifically provided for the consideration of potential relevant conduct for sentencing purposes. Counsel's decision to forgo additional inquiry as to the details of what was contained in the PSR was not deficient, given the evidence that was already before the jury.

Third, Hinson argues that counsel was deficient in failing to "thoroughly cross-examine Pingry regarding all benefits and consideration Pingry received from the government." (Id. at 11-12). The court finds that Hinson's argument again simply reflects a determination to second-guess the tactical decisions of trial counsel, even in the absence of any showing that those decisions were unreasonable. Pingry's credibility was an important issue in the case, and the subject was addressed

fully by both parties. Defendant's trial counsel could reasonably determine that, having already explored the issue at length, further belaboring of the issue could work to the defendant's disadvantage. Of the various suggestions he now presents as to what counsel might have inquired about — that Pingry pled guilty to only two counts, that he was not indicted for other, uncharged crimes, that he had prior convictions in municipal court, and that he was on probation for a weapons charge — none show the existence of constitutional deficiency. As noted earlier, Pingry's plea agreement was introduced at trial, and the jury could determine to which charges Pingry pled, and the fact that the government agreed not to charge Pingry with other conduct. The failure to inquire into the municipal court charges was not deficient, as such inquiry would not have been permissible impeachment under Fed.R.Evid. 609. There is no evidence showing that Pingry otherwise received any material benefit which was not available for the jury's consideration.

Fourth, Pingry complains that counsel was deficient in failing to obtain certain discovery, including Pingry's November 10, 2005 interview, Detective Real's report of his interview with Pingry on December 13, 2005, the recording of the November 16, 2005 controlled buy, and any Informant Agreements between Pingry and the police.

Pingry fails to show that the confidential informant agreement was discoverable, or that it contained any novel information which would have materially undermined Pingry's credibility. Similarly, the video recording of the controlled buy fails to provide any information which would corroborated Hinson's theory that Pingry used a hidden compartment to conceal the methamphetamine. Detective Real testified during the trial, and was carefully cross-examined by the defendant's counsel. His report (Dkt. 70, Exh. 4b) is consistent with that of Detective Hamilton, which was used at trial.

Further, the court finds no basis concluding that the alleged deficiencies were prejudicial to Hinson. That is, for example, even if counsel had conducted further inquiry into the PSR, there is no basis for believing that the result would have been materially different. The jury was already presented with evidence relating to Pingry's credibility, including the possibility that he might temper his testimony to gain a reduction in his own sentence. Given the substantial evidence against Hinson, and the fact that the jury had a sufficient basis to assess Pingry's credibility, the court finds Hinson has failed to show any prejudice as to either of his first three claims of deficient performance.

Hinson next argues that counsel was ineffective in not moving for a mistrial on the grounds that the introduction of Detective Hamilton's statement that he had learned of Pingry's name during the initial investigation was hearsay, as it was "improper vouching for the credibility of the unnamed informant and Pingry." (Dkt. 65, at 18). As noted by the Tenth Circuit in its opinion affirming Hinson's conviction, the Hamilton statement was indeed hearsay. 585 F.3d at 1337. However, the court further found that the introduction of the statement was not plain error, in that it did not affect the jury's verdict:

> We cannot say that the admission of Detective Hamilton's hearsay testimony affected the outcome of Hinson's trial. In addition to Hamilton's statement that she had heard a man named Kevin was Pingry's supplier, Pingry himself testified that Hinson was his supplier, and his testimony was corroborated by evidence produced during a controlled buy. It is unlikely that the officer's additional statements on this issue had any serious impact on the outcome of the trial, so any error in the admission of this evidence did not affect Hinson's substantial rights.

*Id*. at 1338. By the same token, this court finds that Hinson has failed to show prejudice under *Strickland* based upon counsel's failure to advance an objection to the Hamilton statement. Given all of the evidence in the case, including evidence of the controlled buy, the money seized from Hinson, the recorded telephone calls, and the testimony of the witnesses at trial, the court finds no

real likelihood that the brief reference to the initial investigation by Detective Hamilton deprived Hinson of a fair trial, or created a real possibility of prejudice in the outcome of the trial.

Sixth, Hinson contends that counsel was ineffective in failing to obtain the suppression of evidence obtained following the seizure of his truck. As with his previous argument, the validity of the seizure was explicitly examined by the Tenth Circuit. The court found both that the police had cause to arrest Hinson, and that "[t]he police were justified in searching Hinson's car incident to his arrest." 585 F.3d at 1334, 1335. In his current motion, Hinson fails to demonstrate how these conclusions were incorrect, or provide any authority which would authorize this court to reach any contrary conclusion. Hinson was properly arrested based on the information relating to the recent drug trafficking, and his truck was validly searched following his arrest.

Seventh, Hinson contends that his trial counsel was ineffective in failing to object to the sentence imposed. In particular, he complains that counsel did not object to the offense level calculation of 36 based on the amount of drugs involved, state that Pingry had been released from prison following the government's Rule 35 motion, or object to the inclusion of three criminal history points for his 1996 Cowley County, Kansas conviction for burglary and felony theft. (Dkt. 65, at 24-25). The court finds that counsel was not deficient. As with Hinson's previous two arguments, the issue of the sentence was specifically addressed by the Tenth Circuit, which upheld the sentence imposed by this court. The Court of Appeals specifically rejected Hinson's argument based on the amount of drugs involved. 585 F.3d at 1341. As the sentence in Cowley County imposed an aggregate sentence of 16 months, his criminal history was properly calculated under U.S.S.G. § 4A.1.2(e)(1).

6

Hinson's argument as to Pingry's reduced sentence is premised on the reduced sentence received by his co-conspirator, Pingry. But while the Sentence Guidelines contemplate general uniformity in sentencing nationwide, they do not mandate the imposition of identical sentences among defendants with different levels of culpability. *See United States v. Davis*, 437 F.3d 989 (10th Cir. 2003). Here, the sentence (240 months) imposed was substantially less than the Guideline (324 to 405 months), and was reasonable in light of all the circumstances of the case, including Hinson's degree of culpability, relevant conduct, and criminal history.

Finally, Hinson makes a general argument based on the cumulative effect of his counsel's alleged failures. The court rejects this argument. With the exception of the failure to object to the hearsay statement by Hamilton, the court finds for reasons stated earlier, the counsel did not act ineffectively in refusing to make the tactical decisions which Hinson now advocates. As noted earlier, the Tenth Circuit explicitly found that this hearsay statement did not deprive Hinson of a fair trial, given all of the evidence in the case. Independent of his arguments which reflect simply disagreements with the Tenth Circuit's rejection of his appeal, Hinson's current arguments center around second-guessing of counsel's impeachment of Pingry. The court finds that Pingry's credibility was actively and extensively tested during the trial, and Hinson has failed to show either that counsel was ineffective in failing to raise the arguments he now cites, or that the failure to do so was in any way prejudicial.

IT IS ACCORDINGLY ORDERED this 29th day of July, 2011, that the defendant's Motion for Relief (Dkt. 65) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE